lished tariff rates the storage charges at less than cost is a discrimination.

Under the doctrine enunciated in New York, New Haven & Hartford R. R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515, I agree there is no practical distinction between service charges on the basis of cost and reasonable or fair value, but I am apprehensive that the effect thereof will be to substitute the uncertainty of rates in reliance upon business competition for the certainty of published tariff rates, and as a practical result the cost to shippers, and incidentally to the public, may, and probably will, increase, since the warehousemen are not subject to any regulatory authority whatsoever.

---

**BALTIMORE & O. R. CO. et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Interveners).**

District Court, S. D. New York.

Aug. 24, 1937.

For majority opinion, see 20 F.Supp. 273.

HULBERT, District Judge.

With some misgiving, I concur in the opinion of Circuit Court Judge CHASE whose conclusions are inescapable under the law as it now is.

The voluntary inquiry instituted by the Interstate Commerce Commission, "Ex parte No. 104, Practices of Carriers Affecting Operating Revenues and Expenses," was upheld, generally, by the Supreme Court of the United States in the case of United States of America and Interstate Commerce Commission, appellants, v. American Sheet & Tin Plate Co., et al., 301 U.S. 402, 57 S.Ct. 804, 81 L.Ed. ——, and particularly with reference to part 2 of that proceeding having to do with terminal services.

The plaintiffs in the case now before this court have published tariffs including the in transit storage as well as the rates of carriage. The Interstate Commerce Commission has found that under the pub-

---

**SQUIER v. UNITED STATES.**

No. 4367.

District Court, D. New Jersey.

Oct. 18, 1937.

Colladay, McGarraghy, Colladay & Wallace, of Washington, D. C., for plaintiff.

John J. Quinn, U. S. Atty., of Red Bank. N. J., James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe and Milford S. Zimmerman, Sp. Assts. to Atty Gen.

FORMAN, District Judge.

Plaintiff was an executor and trustee of the estate of his father, William C. Squier, who died a resident of the state of New Jersey in the year 1908, and whose will was duly admitted to probate in the same year in the surrogate's court of Union county, N. J. Plaintiff was also an executor and trustee of the estate of his mother, Catherine C. Squier, who died in the year 1913, and whose will was likewise duly admitted to probate in the same year in said surrogate's court of Union county, N. J. He inherited property as a beneficiary from each of said estates.

In July, 1927, one Charles Burnham Squier, the son of a deceased brother of plaintiff, brought an action against plaintiff and the other executors and trustees named in the wills above referred to in the Supreme Court of the state of New York.

Under the will of William C. Squier a life estate in certain property was left to Catherine C. Squier with a power of appointment of the remainder. Charles Burnham Squier, the grandson, in filing the aforesaid suit, demanded an accounting alleging that the grandmother had not exercised the power of appointment which had been given her.

In said action as brought by Charles Burnham Squier this plaintiff was named as a defendant in both his capacity as an executor and trustee, and in his individual capacity. He and his cotrustee, Augustus S. Houghton, together with the other individual defendants, retained a firm of lawyers to defend that action. Final judgment was given for the defendants therein.

At the time Charles Burnham Squier instituted said suit for an accounting all the assets of the grandmother's estate and of the grandfather's estate had been distributed in full and all the trusts which might have been affected by the litigation had been terminated, with the result that this plaintiff was called upon to pay to said firm of attorneys in 1929 on account of services rendered and disbursements made in said action the sum of $30,154.55, which he did so pay.

The foregoing $30,154.55 represents only that portion of the fee which was paid by this plaintiff. The aggregate fee was borne proportionately by the eventual heirs of Catherine C. Squier, of whom this plaintiff was one.

The plaintiff claimed the said sum of $30,154.55 as a deduction on his individual tax return for 1929, but upon audit the same was disallowed by the Commissioner of Internal Revenue. The tax paid thereon was $6,519.02. Following the filing and rejection of a claim for refund, the instant suit was brought.

The controversy in this case is governed by the provisions of the Revenue Act of 1928. The section of said statute dealing with deductions of the character herein involved is as follows:

"§ 23. Deductions from gross income

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C.A. § 23 and note.

The application of section 23(e) of the same act (26 U.S.C.A. § 23 note) is also urged upon the court. This section provides as follows:

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

The court, however, is of the opinion that the expenditure is not a loss, and it will therefore confine its discussion to the former statute. Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505.

It has been argued that a trustee is not engaged in a trade or business and for that reason the statute above quoted is inapplicable. A determination of this problem will not be dispositive of the case at bar. The court is not concerned so much with a determination of whether a trusteeship is a trade or business, but, more specifically, is concerned with this problem:

Whether the plaintiff may deduct from his individual income tax return attorney fees incurred in the preservation of his individual share of an estate.

In the case of Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505, the plaintiff sued to recover an income tax paid by reason of the disallowance as a deduction of an attorney's fee incurred by him within the taxable year in the defense of a suit for an accounting instituted by a former partner. The defense to the suit was successful. Mr. Justice Sutherland, in upholding the right of the taxpayer to deduct as a business expense the disbursement for attorney fees, referred to various decisions of the Bureau of Internal Revenue and of the Board of Tax Appeals which permitted legal expenses to be deducted, and said (at page 153 of 276 U.S., 48 S.Ct. 219, 220, 72 L.Ed. 505): "The basis of these holdings seems to be that where a suit or action against a taxpayer is directly connected with, or, as otherwise stated (Appeal of Backer, 1 B.T.A. 214, 216), proximately resulted from, his business, the expense incurred is a business expense within the meaning of section 214 (a), subd. 1, of the act. These rulings seem to us to be sound and the principle upon which they rest covers the present case. If the expense had been incurred in an action to recover a fee from a client who refused to pay it, the character of the expenditure as a business expense would not be doubted. In the application of the act we are unable to perceive any real distinction between an expenditure for attorney's fees made to secure payment of the earnings of the business and a like expenditure to retain such earnings after their receipt. One is as directly connected with the business as the other."

The plaintiff as a beneficiary in the instant case was in no business as was the plaintiff in the foregoing case, and for that reason the two cases are not analogous.

The plaintiff cites the case of Kottemann v. Commissioner (C.C.A.) 81 F.(2d) 621, wherein the taxpayer was in the employ of Julian Petroleum Corporation, and in his official capacity had done certain acts which had caused him to be indicted. He also alludes to a further case involving a criminal indictment, Commissioner v. People's Pittsburg Trust Co. (C.C.A.) 60 F.(2d) 187, wherein the taxpayer, as chairman of the board of directors of the Crucible Steel Company of America,

signed and made affidavit to the income tax returns of that corporation. The execution of said returns in this manner was one of his many duties. The returns thus executed were deemed fraudulent by the government, with the result that the taxpayer was indicted. The plaintiffs in each of these suits incurred attorneys' fees and incidental expenses in defending these criminal cases, which they claimed as deductions in their tax returns. The courts held that the said attorneys' fees and other disbursements were not personal but constituted ordinary and necessary expenses which were deductible. Again, these situations are entirely distinguishable from the situation of the plaintiff in this case. There the courts held the expenses incurred and paid out by them to be necessary because the acts were performed by the taxpayers in carrying on their trades or businesses. That, however, is not the case at bar. Here the business of the trust had been terminated and distribution of the estate had been effected. Plaintiff was interested in preserving the status quo of the distribution purely from a personal standpoint. The expenses incurred in his defense to the action by Charles Burnham Squier were for his individual, and not his official, protection. If these expenses had been incurred in his official capacity the estate should save him harmless, and then it would be the estate's deduction, if any there should be. The court, however, is not concerned with that point, as the estate is not claiming the deduction.

Since the attorney fees were incurred in furtherance of the plaintiff's personal benefit, it follows that the case of Hutchings v. Burnet, Commissioner of Internal Revenue, 61 App.D.C. 109, 58 F.(2d) 514, is controlling. In that case the taxpayer joined in a suit to contest a will in which a settlement was effected. Thereafter the same taxpayer was sued in respect to the title to certain property and successfully defended the action. The legal expenses incurred in these two actions were claimed as a deduction in the taxpayer's individual return. The court, among other things, held that these expenditures affected only her personal interests in the estate and were not deductible.

The court finds further authority to support its conclusion in the case of Lindley v. Commissioner of Internal Revenue (C.C.A.) 63 F.(2d) 807, 808, wherein an administrator paid the taxes assessed against the estate and lost in a suit for a

920

recovery thereof. Thereupon the petitioner joined with some of the other heirs in taking an appeal in the name of the administrator, and obtained a reversal of the judgment. The petitioner deducted the attorney fees incurred in the prosecution of her appeal. This deduction was disallowed. The court stated: "In this case, however, the petitioner was acting only to secure her own personal rights as an heir at law, even though she and the others did so in the name of the administrator."

In the instant case plaintiff was likewise acting to secure his personal rights in the estate. Accordingly, judgment will be entered for the defendant.